FILED
MAR 2 7 2019
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br><br>Shanynn Kemp<br><br>_____<br>*Defendant(s)* | )<br>)<br>)  Case No. 5:19-mj-1380-JG<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 19, 2017__ in the county of __Harnett__ in the __Eastern__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C Section 1512(b) | Tampering with a witness, victim, or an informant. |
| 18 U.S.C. Section 1512(c)(1) | Tampering with documents or proceedings. |

This criminal complaint is based on these facts:
SEE ATTACHMENT

☑ Continued on the attached sheet.

On this day, **JESSICA SMELTZ** appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Criminal Complaint

_____
*Complainant's signature*

Jessica Smeltz, FBI
*Printed name and title*

Date: **26 MARCH 2019**

_____
*Judge's signature*

City and state: Raleigh, NC

James E. Gates, US Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

## PROBABLE CAUSE AFFIDAVIT

I, Special Agent Jessica Smeltz (Affiant), having been duly sworn according to law, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) assigned to the Fayetteville, North Carolina (NC) Resident Agency of the Charlotte Division and have been employed by the FBI since March of 2017. I am assigned to the Violent Crimes against Children Unit where I am responsible for investigations involving the sexual exploitation of children.

2. I have participated in numerous child exploitation investigations. I have received training in the area of child sexual exploitation as well as specialized instruction on how to conduct investigations of child sexual exploitation through the FBI. I have attended the FBI Violent Crimes Against Children Unit Program Coordinators Conference in June, 2018, and the Crimes Against Children Conference in August, 2018.

3. As a result of my training and experience, I am familiar with federal criminal laws and know that it is a crime to knowingly intimidate, threaten, and corruptly persuade another person, and attempt to do so, and engage in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of any person in an official proceeding; cause and induce any person to withhold testimony from an official proceeding; and with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission or possible commission of a Federal offense, in violation of 18 U.S.C. § 1512(b); and to among other things, corruptly conceal a record, document, and other object, or attempt to do so, with the intent to impair the object's integrity and availability for use in an official proceeding, in violation of 18 U.S.C. § 1512(c)(1).

4. Information contained within this affidavit is based upon information from my investigation, personal observations, training and experience, and information relayed to me by other law enforcement officers and or agents.

5. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested arrest warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested warrant.



## PROBABLE CAUSE

6. Mr. Daniel N. Kemp is an active duty member of the United States Army. He has been on active duty since approximately August 28, 1991. On or about December 13, 2000, Mr. Kemp and his wife, Shanynn Kemp (S. KEMP), adopted six children while Mr. Kemp was stationed at Fort Drum in New York. Mr. Kemp was then stationed at multiple duty stations in the Army whereby his wife and adopted children followed him. On or about June 29, 2016, Mr. Kemp was stationed at Fort Bragg in North Carolina and he moved his family to a residence located at 3 Bloom Road, Cameron, North Carolina, 28310 which property is located on concurrent federal jurisdiction.

7. On April 19, 2017, Victim 1, then 18 years old and a senior at Overhills High School in Spring Lake, North Carolina, disclosed to her teacher, guidance counselor, a social worker and an agent from Army Criminal Investigation Command (CID) that she was being sexually abused by her father Mr. Kemp. She stated Mr. Kemp first sexually abused her around 2013-2014, while residing in Fort Sill, Oklahoma. She stated the abuse continued while living in Cameron, North Carolina. She disclosed being physically abused by S. KEMP and Mr. Kemp and showed her teacher photos of the physical abuse on her Nintendo DS. She also disclosed that Mr. Kemp forced her to watch pornographic videos on his computer.

8. Prior to Victim 1 getting home from school, Child Protective Services (CPS), Adult Protective Services[1] (APS), and law enforcement went to the Kemp residence. Law enforcement informed S. KEMP and Mr. Kemp that an individual made a sexual allegation against Mr. Kemp. At the time, three of the Kemp children were present at the residence.[2] CPS, APS, and law enforcement briefly spoke to all three children in front of S. KEMP. All three denied being sexually abused. Law enforcement removed Mr. Kemp from the home.

9. Once Victim 1 arrived home from school, S. KEMP told her to pack a few items and get in the van because they were leaving. Victim 1 noticed that her sibling's had bags packed and were getting in the vehicle. She also saw that S. KEMP took digital devices from the home and put them in the van. S. KEMP did not immediately tell the children where they were going. Once in the van, S. KEMP asked Victim 1 why she was the only one who did not appear upset. Victim 1 knew that S. KEMP believed she was the one who told about the sexual abuse. While in the van, S. KEMP told Victim 1 that Mr. Kemp was suicidal and if he killed himself she would not have any healthcare which meant she would die.

10. The following day, a social worker called S. KEMP to arrange forensic interviews of the three children that were in the house when APS, CPS and law enforcement arrived the day before. S. KEMP refused to cooperate with the investigation, would not allow her children to be interviewed and said that she had left the state with her children and they were in Alabama. S. KEMP stated she was outside of their "jurisdiction" and nothing could be done. S. KEMP hung up on the social worker. Shortly after the call with the social worker, S. KEMP called an agent at the Fort Bragg CID office and refused to say where she was taking her children. She stated that Victim 1 lied about the abuse. Within minutes of that call, Victim 1

_At direction of affiant._

---

[1] APS was involved as one of the adult children is disabled.
[2] Two of the children were adults and one was a minor.

called CID and recanted her disclosure. The phone call from Victim 1 was made from S. KEMP's cell phone.

11. Approximately one week later, the Harnett County North Carolina School District received a request for school records pertaining to the Kemp's minor child. The social worker in North Carolina was again able to speak with S. KEMP who advised she was not allowing Victim 1 to attend a new high school although she was approximately five weeks from graduating. S. KEMP hung up on the social worker.

12. On May 7, 2017, CID located and interviewed the second oldest Kemp child, Victim 2. She was unaware of the investigation and reported being somewhat alienated from the family. She moved out of the house while the family was living in Clarksville, Tennessee. She stated that Mr. Kemp called her the night before and offered to give her his GI Bill benefits, but did not mention being under investigation or that S. KEMP had left North Carolina with her siblings. She disclosed that Mr. Kemp started sexually abusing her around the age of 12 or 13 years. She was under the belief that at the time the abuse began she was the only victim.

13. Shortly after Mr. Kemp stopped abusing her, she observed him in the basement garage with the second oldest female sibling. She witnessed Mr. Kemp positioned in front of that sibling, and it appeared as though sibling was performing oral sex on him, although she could not clearly see what was going on. Once Mr. Kemp realized she was in the garage, he quickly exited. That sibling told her that Mr. Kemp was forcing her to perform oral sex on him. It was at this point that she and that sibling went to S. KEMP and informed her they were being sexually abused by Mr. Kemp. S. KEMP stated she would talk to Mr. Kemp. She was aware that the abuse continued with her other sibling and as such they confronted S. KEMP on multiple occasions about it. She reported that she and her other sibling confronted Mr. Kemp about the abuse and on one occasion she told him that she was going to tell someone outside of the family so that it would stop. She also disclosed that S. KEMP physically abused all of the children to include using paddles, wooden objects, and physical punishment.

14. On May 10, 2017, CID agents executed an Army search authorization issued by a Military Magistrate at the Kemp residence located at 3 Bloom Road, Cameron, North Carolina 28310, for the seizure of electronic devices and the seizure and search of evidence pertaining to sexual assault. Upon conducting the search, CID agents located a desktop computer monitor and keyboard; however, the actual computer tower had been removed and was not located inside the house. CID agents located and seized other electronic devices inside of the residence.

15. On May 11, 2017, CID agents conducted surveillance at 4919 Saddlehorn Drive, Arlington, Texas 76017. This was the address provided to the high school in North Carolina from which the youngest Kemp child transferred. CID determined this address was the residence of S. KEMP's parents. While conducting surveillance, CID agents saw Victim 1, Victim 1's sister, and S. KEMP's parents exit the house and go to a nearby church. One of the CID agents entered the church and approached Victim 1 and identified himself at which time Victim 1 became visibly emotional with tears. Victim 1 stated words to the effect of, "I thought you guys would never find me, I am so scared." Victim 1 stated S. KEMP forced her

(S. KEMP)

At direction of affiant. [signature]

to recant what she said. Victim 1 stated everything she reported to law enforcement was true. Victim 1 said S. KEMP told her that if she continued to tell people Mr. Kemp raped her that he would either commit suicide or go to prison which meant they would not have any healthcare or money. S. KEMP told Victim 1 that if she did not have healthcare, then she would not be able to get her necessary medication that allows her to live. The CID agent asked if they could meet with Victim 1 later on, and Victim 1 stated S. KEMP did not allow her to leave the house unaccompanied.

16. Later on May 11, 2017, CID agents and detectives from the Arlington Police Department Crimes Against Children Unit went to the residence at 4919 Saddlehorn Drive, Arlington, Texas 76017. The agents entered the house and Victim 1 agreed to go with the agents. In front of Victim 1's siblings, S. KEMP's father stated that Victim 1 was going to be put in a prison cell. The CID agents corrected the statement and explained that was not true.

17. One of the CID agents conducted an interview of Victim 1 prior to her placement in a women's shelter. Victim 1 again provided an account of the sexual abuse she endured by Mr. Kemp. Victim 1 stated she told S. KEMP on more than one occasion that she was being abused by Mr. Kemp. Victim 1 said S. KEMP confronted Mr. Kemp, and Mr. Kemp told S. KEMP that Victim 1 "wanted it" and "liked it." Victim 1 notified law enforcement that Mr. Kemp showed her pornographic content on the desktop computer (the one removed by S. KEMP) that depicted older men engaged in sexual acts with females that appeared to be under the age of 18 years. Victim 1 stated many of these depictions were from Tumblr and RedTube. Victim 1 also stated that Mr. Kemp moved pornographic files onto different digital devices. Victim 1 stated when CID dropped her off at her residence after her initial disclosure, S. KEMP had packed up the van for them to flee the state. Victim 1 stated S. KEMP did not say where they were going. Victim 1 confirmed that S. KEMP removed several digital devices to include the desktop tower and brought them to Texas.

18. Also on or about May 11, 2017, S. KEMP wrote on Victim 2's public Facebook page, "You're a lying little bitch! You're dead to me!" S. KEMP also contacted Victim 2 through her father's (Mr. Joe Gay) Facebook account and discussed the disclosure made by Victim 1. S. KEMP also stated, "I have shut down my face book after unfriending everyone. That is why I'm contacting you on papa Joe's face book. I just don't want them using it against me or something."

19. On May 12, 2017, a Texas state search warrant was issued to search and seize the digital devices inside 4919 Saddlehorn Drive, Arlington, Texas 76017. Law enforcement located the desktop tower and Mr. Kemp's personal laptop along with other digital devices that S. KEMP took from the North Carolina residence.

20. On May 18, 2017, S. KEMP called Victim 2 from phone number 419-860-4233 and left her a voicemail apologizing for the things she had previously said to her on Facebook. On or about May 24, 2017, S. KEMP and Victim 2 had a conversation via text message about the abuse allegations. S. KEMP stated that if Mr. Kemp goes to jail then she loses everything to include her healthcare which will mean her death. Victim 2 stated that her father molested

her and that she came to S. KEMP on multiple occasions about it but that S. KEMP did nothing. Eventually S. KEMP stopped responding when confronted by Victim 2.

21. On June 19, 2017, Witness A was interviewed. She stated she has known the Kemp family since approximately 2001. She witnessed S. KEMP and Mr. Kemp physically abuse the children. Specifically, she observed them hit the children in the face, beat them with belts, a cane and other various objects. She also stated that Mr. Kemp installed an exterior lock on a small closet in which the young children would be locked inside for extended periods of time and that S. KEMP watched him do it. She also observed S. KEMP and Mr. Kemp provide the underage children with hard alcohol, leave pornographic magazines in the open for the children to access, and watch pornographic material online in the presence of the children.

22. On September 13, 2017, the oldest Kemp child (in custody at the Morgan County, Tennessee Correctional Complex) disclosed that Mr. Kemp physically and mentally abused him beginning shortly after he was adopted around the age of 10. He denied knowledge of the children being sexually abused. During a subsequent interview, he admitted that he was not initially forthcoming because he needed money for commissary and his family provided him with the assistance. He then disclosed that Mr. Kemp forced him and Victim 2 to perform sexual acts upon each other multiple times while he watched and that another sibling told him Mr. Kemp forced her to perform oral sex on him.

23. On November 3, 2017, a search warrant was issued out of the EDNC for the contents of the Facebook accounts of S. KEMP and Mr. Joe Gay based on the communications about the case between S. KEMP and Victim 2. The Facebook return shows that S. KEMP removed all of her "friends" on the account on May 11, 2017. The Facebook return for Joe Gay showed messages exchanged between Joe Gay and Victim 2 on June 11, 2017. The message string started with, "This is your mommy. I sent you a message that was very harsh and maybe I was wrong…" The user of Joe Gay's account went on to say Victim 1 is lying and that the user is not sure how she will support the other three kids if her dad goes to jail. Victim 2 confronted the user about the fact that when Victim 2 told her she was being abused, the user (whom appeared to be S. KEMP based on the messages) did nothing about it.

## CONCLUSION

24. Based the foregoing investigation, this Affiant has probable cause to believe that the suspect, S. KEMP, did commit violations of federal law, including 18 U.S.C. § 1512(b) and (c)(1). I respectfully request that a criminal complaint be issued for S. KEMP's arrest.

*Jessica Smeltz*
Jessica Smeltz
Special Agent
Federal Bureau of Investigation

On this 26 day of March, 2019, Jessica Smeltz appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

_____
JAMES E. GATES
UNITED STATES MAGISTRATE JUDGE